Filed 7/22/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| DOUGLAS GOTTERBA, | 2d Civil No. B247518 |
| Plaintiff and Respondent, | (Super. Ct. No. 1414528) (Santa Barbara County) |
| v. | |
| JOHN TRAVOLTA et al., | |
| Defendants and Appellants. | |

Here we hold that a declaratory relief action filed in response to an attorney's letters threatening litigation over a contract dispute does not come within the provisions of a strategic lawsuit against public participation ("SLAPP"). (Code Civ. Proc., § 425.16.)[1]

John Travolta, Atlo, Inc., a Delaware corporation, Constellation Productions, Inc., a California corporation, and Constellation Productions, Inc., a Florida corporation,[2] appeal the trial court's order denying their motion to strike the first amended complaint for declaratory relief filed by Douglas Gotterba. We conclude that the trial court properly denied the motion to strike the complaint as a SLAPP, and affirm.

_____

[1] All further statutory references are to the Code of Civil Procedure.

[2] We shall refer to the appellants collectively as "Atlo," except where clarity demands that we draw a distinction.

*FACTS AND PROCEDURAL HISTORY*

Between 1981 and 1987, Atlo employed Gotterba as an airplane pilot. In early 1987, Gotterba voluntarily left his employment with Atlo. The parties entered into a written termination agreement concerning employment matters such as updating and turnover of airplane log books, return of employer credit cards, discontinuation of telephone service, and cessation of medical insurance.

Gotterba asserts that a three-page termination agreement dated March 17, 1987, is the enforceable agreement between the parties. That unsigned agreement does not contain a confidentiality provision restricting Gotterba's disclosure of personal, confidential, or proprietary information obtained during the course of his employment with Atlo.

In contrast, Atlo insists that the enforceable termination agreement between the parties is a four-page agreement dated April 3, 1987, that includes this provision: "You hereby represent that you have not and will not disclose, communicate, use, nor permit the use of, in any fashion, any personal (i.e., those matters not customarily disclosed by Employer other than to insiders, in the case of [Atlo], or close friends in the case of Travolta), confidential or proprietary information about Employer or any principals of Employer that you obtained during your employment with Employer." This agreement appears to have been executed by Gotterba, Atlo, and Travolta. Atlo asserts that the three-page agreement upon which Gotterba relies is but an early draft of the termination agreement and was not executed by the parties.

Nearly 25 years following cessation of his employment with Atlo, Gotterba decided to "tell the story of his life and those involved in it," including his personal relationship with Travolta. According to Gotterba, he was "unwillingly thrust" into the gossip tabloids by public revelations from another former Travolta employee.

In June 2012, Atlo's attorney, Martin D. Singer, learned that Gotterba had given statements to a weekly newspaper, the National Enquirer, and that he planned to publish a book regarding his personal and intimate relationship with Travolta. On June

2

18, 2012, Singer sent a letter to Gotterba demanding that he cease making statements regarding his prior employment and relationship with Travolta. Singer warned Gotterba that he had breached the confidentiality provision of the termination agreement and "face[d] serious legal consequences." Singer continued: "We demand that you immediately cease and desist from your wrongful course of conduct which has subjected you to enormous liability and entitles my client to seek tens of millions of dollars in compensatory and punitive damages. . . . [¶] You proceed at your peril."

On June 29, 2012, and again on July 31, 2012, Gotterba's attorney wrote Singer and requested identification of the asserted confidentiality provisions of the three-page termination agreement. Gotterba's attorney also stated that Gotterba intended to publish a biography and would "respond to the media attention he has received in a honest and straight forward manner." Singer did not respond to either letter.

On August 30, 2012, Singer wrote to the attorney representing American Media, Inc. ("AMI"), the parent company of the National Enquirer, informed them that Gotterba's termination agreement contained a confidentiality provision, and included the relevant portion of the four-page agreement. Singer warned AMI that publication of Gotterba's statements would expose AMI "to significant liability for interference with contract." AMI later sent Gotterba's attorney a copy of Singer's letter and attachment.

On September 4, 2012, Gotterba's attorney wrote Singer, demanded that he retract his claim to AMI regarding a confidentiality provision, and threatened litigation against Atlo, Singer, and the law firm involved in drafting the 1987 termination agreement. On September 6, 2012, Singer responded and included a copy of the four-page termination agreement and a cover letter dated April 2, 1987, which was copied to "Stephen R. Jaffe, Esq." Singer stated that Gotterba "now faces significant liability," and that Atlo will respond to any lawsuit filed by Gotterba with an anti-SLAPP motion and a malicious prosecution action.

3

On November 29, 2012, Gotterba filed a first amended verified complaint against Atlo, alleging but one cause of action entitled "Non Monetary Declaratory Relief." Gotterba alleges that the four-page termination agreement "is not authentic," that he did not execute that agreement, and that no attorney, including Stephen R. Jaffe, represented him concerning the agreement. Gotterba seeks a judicial declaration whether the three-page agreement or the four-page agreement is the enforceable termination agreement between the parties, and whether a confidentiality provision, if one exists, is enforceable. He also states that a judicial declaration is necessary so that he may determine his rights and duties under the agreement and because Travolta "has repeatedly threatened legal action" against him "based upon alleged violations and prospective violations of the purported 'confidentiality agreement.'" Attached to the first amended complaint are copies of the unexecuted three-page agreement and the executed four-page agreement.

On February 1, 2013, Atlo filed an anti-SLAPP motion to strike the first amended complaint, pursuant to section 425.16. Atlo asserted that Gotterba "filed this action to prevent Travolta from exercising his right to send [prelitigation demand] letters and/or suing to enforce the terms of the parties' 1987 agreement." Following written and oral argument by the parties, the trial court denied the motion.

Atlo appeals and contends that the trial court erred by denying the anti-SLAPP motion.

*DISCUSSION*

Atlo asserts that Gotterba's declaratory relief lawsuit arises from the protected petitioning activity of prelitigation demand letters. (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 193 ["'The point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights'"].) Atlo relies upon *Guessous v. Chrome Hearts, LLC* (2009) 179 Cal.App.4th 1177, to contend that the demand letters form the "actual controversy upon which to base the claim for declaratory relief." (*Id.* at p. 1186.)

4

Section 425.16, subdivision (b)(1) provides that a cause of action "arising from" a defendant's act in furtherance of a constitutionally protected right of free speech may be struck unless the plaintiff establishes a probability that he will prevail on his claim. (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 665, fn. 3.) "[S]ection 425.16 provides a procedure for the early dismissal of what are commonly known as SLAPP suits . . . litigation of a harassing nature, brought to challenge the exercise of protected free speech rights." (*Ibid.*) A SLAPP suit is generally brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff. (*Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1215 [SLAPP plaintiff does not expect to succeed in his lawsuit, only to tie up defendant's resources to allows plaintiff sufficient time to accomplish his underlying objective]; *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 927.)

An anti-SLAPP motion lies against a complaint for declaratory relief, among other types of causes of action. (*South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 665-666.) "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability--and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.)

The analysis of an anti-SLAPP motion pursuant to section 425.16 is two-fold. (*Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722, 727; *Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1104.) The trial court first decides whether defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. If the court finds that a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on his claim. (*Ibid.*) Our inquiry regarding the first prong of the analysis concerns the principal thrust or gravamen of the cause of

5

action--the allegedly wrongful and injury-producing conduct that provides the foundation for the claims. (*Talega Maintenance Corp.*, at p. 728.)

We independently review the trial court's determination of each step of the analysis. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325-326; *Silk v. Feldman* (2012) 208 Cal.App.4th 547, 553.) "'[W]e engage in the same, two-step process as the trial court to determine if the parties have satisfied their respective burdens. [Citations.] If the defendant fails to show that the lawsuit arises from protected activity, we affirm the trial court's ruling and need not address the merits of the case under the second prong of the statute.'" (*Talega Maintenance Corp. v. Standard Pacific Corp.*, *supra*, 225 Cal.App.4th 722, 728.)

The parties properly agree that a communication preparatory to or in anticipation of litigation falls within the protection of section 425.16, subdivision (e)(2), as a "written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . ." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115; *Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1294; *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1479.) However, Atlo misconstrues the genesis of Gotterba's first amended complaint.

Contrary to Atlo's position and arguments, Gotterba's complaint is not based upon Atlo's sabre-rattling demand letters. The complaint seeks declaratory relief regarding the validity of the asserted termination agreements and not the propriety of Atlo's demand letters. Gotterba alleges: "PLAINTIFF desires a judicial determination of his rights and duties, and a declaration as to the validity of the [three-page] termination agreement and that PLAINTIFF is not subject to any confidential agreement with Defendants." In deciding whether a lawsuit is a SLAPP action, the trial court must distinguish between speech or petitioning activity that is mere *evidence* related to liability, and liability that is *based on* speech or petitioning activity. (*Graffiti Protective Coatings, Inc. v. City of Pico Rivera*, *supra*, 181 Cal.App.4th 1207, 1214-1215.) "Prelitigation communications . . . may provide evidentiary support for the complaint

6

without being a basis of liability. An anti-SLAPP motion should be granted if liability is based on speech or petitioning activity itself." (*Id.* at p. 1215.)

Although the prelitigation letters may have triggered Gotterba's complaint and may be evidence in support of the complaint, they are not the basis of the complaint. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77-78 [distinction between "arising from" defendant's exercise of rights and "in response to"].) "That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such." (*Id.* at p. 78.) The critical issue concerns whether "the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*Ibid.*) If the threats of litigation were removed from Atlo's demand letters, the same dispute would exist regarding the terms of the termination agreement, i.e., Gotterba seeks to publish a book concerning his relationship with Travolta. The demand letters do not form the "actual controversy upon which to base the claim for declaratory relief," but are merely evidence that a controversy between the parties exists. (*Guessous v. Chrome Hearts, LLC*, *supra*, 179 Cal.App.4th 1177, 1186.) That "protected activity may lurk in the background--and may explain why the rift between the parties arose in the first place--does not transform a [contract] dispute into a SLAPP suit." (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 478.)

Moreover, Gotterba's complaint does not seek a declaration regarding Atlo's communication with AMI or a declaration that any specific conduct by Gotterba or Atlo is permitted or not permitted by the termination agreement. The lawsuit also does not seek to curtail Atlo's right to send demand letters.

Acceptance of Atlo's arguments would lead to the absurd result that a person receiving a demand letter threatening legal action for breach of contract would be precluded from seeking declaratory relief to determine the validity of the contract. Declaratory relief would be limited to situations where the parties have not communicated their disagreement regarding an asserted breach of contract.

7

Atlo's reliance upon *Country Side Villas Homeowners Assn. v. Ivie* (2011) 193 Cal.App.4th 1110, *Guessous v. Chrome Hearts, LLC*, *supra*, 179 Cal.App.4th 1177, and *Levy v. City of Santa Monica* (2004) 114 Cal.App.4th 1252, is misplaced.

*Country Side Villas Homeowners* Assn. *v. Ivie*, *supra*, 193 Cal.App.4th 1110, involved an action for declaratory relief and attorney fees filed by a homeowners association against a homeowner who "spoke out against the members of her homeowners association board and management on matters that affected all members of the association," and who demanded the association's financial documents. (*Id.* at p. 1118.) The reviewing court concluded that the action "clear[ly] . . . arose from [defendant's] . . . right of free speech in criticizing and speaking out against [the association]." (*Ibid.*)

*Levy v. City of Santa Monica*, *supra*, 114 Cal.App.4th 1252, concerned an action for declaratory and injunctive relief and damages by plaintiff homeowners against a city, city council member, and plaintiff's neighbor. Plaintiffs sought declaratory relief that city council members be precluded from influencing city administrative staff regarding a playhouse built on plaintiff's property. (*Id.* at p. 1257.) *Levy* reversed the trial court's ruling that SLAPP did not apply, and concluded that the city met its burden of establishing that plaintiffs' action arose from protected speech. (*Id.* at p. 1258 ["[The neighbor's] act of contacting her representative and [the city council member's] act of contacting planning staff are petitions for grievances against the government protected by the First Amendment"].)

*Guessous v. Chrome Hearts, LLC*, *supra*, 179 Cal.App.4th 1177, involved an action between business competitors wherein plaintiffs asserted claims for breach of contract and declaratory relief based upon defendant's lawsuits filed in France in asserted violation of a covenant not to sue. (*Id.* at pp. 1180-1182.) *Guessous* held that "petitioning activity undertaken in a foreign county is not protected by the anti-SLAPP statute." (*Id.* at p. 1186.) In dictum, the reviewing court noted that the lawsuits in France formed the "actual controversy" upon which plaintiffs' claims rested. (*Ibid.*) In

8

contrast, Gotterba's lawsuit seeks a declaration regarding the terms of his termination agreement, not whether Atlo may send demand letters or threaten litigation.

In view of our discussion, we need not decide whether Gotterba established a probability that he will prevail on his claim. (*Talega Maintenance Corp. v. Standard Pacific Corp.*, *supra*, 225 Cal.App.4th 722, 728 [court need not discuss second prong of two-step analysis if defendant fails to establish lawsuit arises from protected activity].)

The order is affirmed. Respondent shall recover costs on appeal.
CERTIFIED FOR PUBLICATION.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

9

Donna D. Geck, Judge

Superior Court County of Santa Barbara

_____


Lavely & Singer, Professional Corporation, Martin D. Singer, Andrew B. Brettler for Defendants and Appellants.


Sanger Swysen & Dunkle, Robert M. Sanger, Stephen K. Dunkle for Plaintiff and Respondent.