Filed 4/30/15  Sabit v. Abou-Samra CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| ARIA OMAR SABIT et al.,<br><br>   Plaintiffs and Appellants,<br><br>v.<br><br>MOUSTAPHA ABOU-SAMRA et al.,<br><br>   Defendants and Appellants;<br><br>COMMUNITY MEMORIAL HEALTH<br>SYSTEM et al.,<br><br>   Defendants and Respondents. | 2d Civil No. B249793<br>(Super. Ct. No. 56-2012-00427968-<br>CU-BT-VTA)<br>(Ventura County) |

Aria Omar Sabit and Aria Omar Sabit, a professional corporation ("Sabit"), appeal the trial court's order granting a special motion to strike filed by Community Memorial Health System, doing business as Community Memorial Hospital ("the Hospital"); the medical staff of Community Memorial Hospital; and named individuals comprising the Hospital's peer review committee (all aforementioned defendants referred to collectively as "the Hospital defendants").  We conclude that the court properly granted a special motion to strike the two causes of action alleged against the Hospital

defendants as a strategic lawsuit against public participation ("SLAPP"), and we affirm. (Code Civ. Proc., § 425.16.)[1]

Sabit also appeals the trial court's order granting a special motion to strike filed by Moustapha Abou-Samra and Moustapha Abou-Samra, a professional corporation (collectively "Abou-Samra"), regarding a cause of action for intentional interference with prospective economic advantage. We conclude that the court also properly granted this anti-SLAPP motion, and we affirm.

Abou-Samra cross-appeals the trial court's order denying an anti-SLAPP motion regarding two causes of action for breach of contract and one cause of action for an accounting. We conclude that the court properly denied the anti-SLAPP motion regarding these three causes of action, and we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Sabit and Abou-Samra are California-licensed physicians who specialize in neurosurgery. On July 1, 2009, Sabit began employment with Abou-Samra's professional corporation pursuant to a written employment agreement. The agreement required Sabit to obtain medical staff privileges at the Hospital and to provide neurosurgical services for three years. It also set forth Sabit's compensation as a monthly salary, bonus compensation calculated according to a specified formula, and other monetary benefits, including an automobile allowance and reimbursement of certain expenses.

On September 16, 2010, after Sabit formed a professional corporation, the parties entered into an independent contractor agreement to "supersede and replace" the existing employment agreement. ("Independent Contractor Agreement," ¶ 8.3, p. 12.) This agreement also provided for a monthly salary, bonus compensation calculated according to a specified formula, and reimbursement of certain expenses. The agreement permitted early termination in the event Sabit lost his staff privileges at the Hospital,

---

[1] All further statutory references are to the Code of Civil Procedure unless stated otherwise. We will refer to the parties by collective names except where clarity demands that we draw a distinction.

2

either temporarily or permanently. (*Id.*, ¶ 5.1, pp. 8-9.) In that event, Sabit would receive payment of any accrued and unpaid compensation, but not bonuses.

On December 3, 2010, the Hospital's peer review committee, the Medical Executive Committee, informed Sabit that it was summarily suspending his provisional staff privileges at the Hospital "to protect the life or well-being of patients [and] to reduce imminent danger to the life, health or safety of any person." The written notice of suspension referred to two instances where Sabit allegedly did not render appropriate medical care to patients. The committee also scheduled a meeting for December 7, 2010, during which Sabit could defend the accusations of providing inappropriate medical care.

Upon learning that Sabit had been suspended summarily from Hospital privileges, Abou-Samra terminated the independent contractor agreement by written notice dated December 3, 2010. In the written termination notice, Abou-Samra referenced Sabit's "unacceptable surgical complication and infection rates," his incomplete and misleading medical records, and his failure to obtain permanent Hospital staff privileges.

At the December 7, 2010, Hospital peer review hearing, Sabit appeared, discussed his medical practices and patient care, and responded to questions. The committee then decided to reinstate Sabit's provisional privileges, but it required his improvement in six specified areas regarding patient care. Two weeks later, however, Sabit resigned from the Hospital medical staff.

*Complaint Allegations*

On December 3, 2012, Sabit filed a lawsuit against the Hospital defendants, alleging causes of action for denial of the right to practice medicine and intentional interference with contract (third and fifth causes of action). Sabit alleged that the Hospital defendants acted wrongfully in suspending his staff privileges because they acted without proper investigation and with the intent to interfere with his employment with Abou-Samra.

Sabit also sued Abou-Samra, alleging causes of action for breach of the independent contractor agreement, breach of the employment agreement, intentional

3

interference with prospective economic advantage, and an accounting (first, second, fourth, and sixth causes of action). Sabit alleged that Abou-Samra instigated and influenced peer review proceedings to deny him permanent staff privileges and to revoke his provisional staff privileges. According to the complaint, Abou-Samra then used the lack of staff privileges as a pretext to terminate the independent contractor agreement and deny bonus and other sums due pursuant to the two agreements.

*The Hospital Defendants' Anti-SLAPP Motion*

On February 6, 2013, the Hospital defendants filed a special motion to strike the third and fifth causes of action of the complaint pursuant to the anti-SLAPP provisions of section 425.16. In support of the motion, Doctor Samuel D. Small, Chief of Staff of the Hospital, declared that the medical staff became concerned regarding Sabit's medical practices when one patient required urgent intervention from another hospital and a second patient died. Following investigation and review of Sabit's medical charts, the Medical Executive Committee discussed Sabit's performance and determined that summary suspension of his Hospital privileges was necessary to protect patients. Small stated that section 7:2-1 of the Hospital Bylaws expressly authorized summary suspension under the circumstances.

*Abou-Samra's Anti-SLAPP Motion*

On February 14, 2013, Abou-Samra filed a special motion to strike the first, second, fourth, and sixth causes of action of the complaint pursuant to the anti-SLAPP provisions of section 425.16. In support of the motion, Abou-Samra declared that in 2010, he served on the Hospital's peer review committee that reviewed Sabit's medical practices and patient care. As a consequence of Sabit's summary suspension, Abou-Samra terminated Sabit's employment pursuant to paragraph 5 of the independent contractor agreement.

*Sabit's Responses and Declarations*

In response to the anti-SLAPP motions, Sabit declared that Abou-Samra owed him compensation, including reimbursement for automobile expenses and insurance premiums, for his first year of employment (July 1, 2009, through June 30,

4

2010), as well as substantial bonuses pursuant to the two agreements. He estimated that the revenues deriving from his surgical services to Abou-Samra exceed $3 million. Sabit also declared that he believed Abou-Samra sought a pretext to avoid paying the compensation due. Sabit also described the summary suspension and the employment termination as damaging to his professional reputation.

Sabit stated that in addition to his provisional staff privileges at the Hospital, he also held staff privileges at another hospital, Ventura County Medical Center. At the time of the litigation in the trial court, Sabit was a licensed neurosurgeon in Michigan.

Sabit also presented the deposition testimony of Hospital Chief Executive Gary Wilde. Wilde stated that during a conversation in November 2010, Abou-Samra related that Sabit had committed medical errors and that Abou-Samra was disappointed and would be "disassociating" with him.

*Trial Court's Ruling and Orders*

The trial court granted the anti-SLAPP motion of the Hospital defendants, awarded their attorney fees and costs, and entered a judgment of dismissal. (§ 426.16, subd. (c)(1) [prevailing defendant on a special motion to strike entitled to attorney fees and costs].) In its written decision, the court relied in part upon *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 198 ["a lawsuit arising out of a peer review proceeding is subject to a special motion under section 425.16 to strike the SLAPP suit"].) The court noted the absence of evidence that the Hospital defendants and Abou-Samra "worked in concert to manufacture a ground on which Dr. Abou-Samra could terminate the agreement."

The trial court also granted the anti-SLAPP motion of Abou-Samra regarding the fourth cause of action (intentional interference with prospective economic advantage) and awarded him attorney fees and costs. The court denied the motion concerning the causes of action for breach of contract and an accounting.

5

Sabit appeals the orders granting the Hospital's and Abou-Samra's anti-SLAPP motions and awarding their attorney fees and costs as prevailing parties.[2] Abou-Samra cross-appeals the order denying his anti-SLAPP motion regarding the three remaining causes of action alleged against him.

During briefing of this matter, the Hospital defendants and Abou-Samra requested that we take judicial notice of the first amended accusation filed against Sabit with the California Medical Board of California on November 5, 2013. By separate order, we declined to take judicial notice of the amended accusation because it occurred following Sabit's 2010 summary suspension and the filing of this lawsuit.

*DISCUSSION*

*I.*

*Causes of Action against the Hospital Defendants*

Sabit argues that the Hospital's action in summarily suspending his staff privileges cannot be the subject of an anti-SLAPP motion because the suspension is an *action*, not a communication. He also asserts that the Hospital intentionally interfered with his employment with Abou-Samra by issuing the suspension. Sabit relies upon Wilde's deposition testimony that Abou-Samra stated that he intended to "disassociat[e]" with Sabit. Sabit contends that this evidence suggests that the parties acted in concert to suspend his hospital staff privileges and terminate his employment with Abou-Samra.

Section 425.16, subdivision (b)(1) provides that a cause of action "arising from" a defendant's act in furtherance of a constitutionally protected right of free speech may be struck unless the plaintiff establishes a probability that he will prevail on his claim. (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 665, fn. 3.) "[S]ection 425.16 provides a procedure for the early dismissal of what are commonly known as SLAPP suits . . . litigation of a harassing nature, brought to challenge the exercise of protected free speech rights." (*Ibid.*) "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity*

---

[2] By a subsequent notice of appeal, Sabit appeals the judgment of dismissal. We ordered the appeals consolidated.

that gives rise to his or her asserted liability--and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.)

The analysis of an anti-SLAPP motion is two-fold. (§ 425.16, subd. (b)(1); *Flatley v. Mauro* (2006) 39 Cal.4th 299, 314; *Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722, 727.) The trial court first decides whether defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. If the court finds that a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on his claim. (§ 425.16, subd. (b)(1).) Our inquiry regarding the first prong of the analysis concerns the principal thrust or gravamen of the cause of action--the allegedly wrongful and injury-producing conduct that provides the foundation for the claims. (*DeCambre v. Rady Children's Hospital-San Diego* (2015) 235 Cal.App.4th 1, 17; *Gotterba v. Travolta* (2014) 228 Cal.App.4th 35, 51.)

We apply a de novo review to the trial court's determination of each step of the analysis. (*Flatley v. Mauro*, *supra*, 39 Cal.4th 299, 325-326; *Gotterba v. Travolta*, *supra*, 228 Cal.App.4th 35, 51.) "'[W]e engage in the same two-step process as the trial court to determine if the parties have satisfied their respective burdens. [Citations.] If the defendant fails to show that the lawsuit arises from protected activity, we affirm the trial court's ruling and need not address the merits of the case under the second prong of the statute.'" (*Talega Maintenance Corp. v. Standard Pacific Corp.*, *supra*, 225 Cal.App.4th 722, 728.)

At the time of Sabit's summary suspension, section 7:2-1 of the Hospital Bylaws authorized a summary suspension "[w]henever a member's conduct appears to require that immediate action be taken to protect the life or well-being of patient(s) or to reduce imminent danger to the life, health or safety of any patient or other person." This bylaw is consistent with California law authorizing an immediate summary suspension when "failure to take that action may result in an imminent danger to the health of any individual." (Bus. & Prof. Code, § 809.5, subd. (a).)

7

In *Kibler v. Northern Inyo County Local Hospital Dist.*, *supra*, 39 Cal.4th 192, 198, our Supreme Court held that an anti-SLAPP motion was available to a hospital and its medical staff regarding their actions in a peer review proceeding where the disciplined physician later sued for interference with his practice of medicine. There, the hospital summarily suspended the physician's staff privileges for two weeks, but reinstated them after he agreed to refrain from certain behaviors. (*Id.* at p. 196.) *Kibler* reasoned that a lawsuit arising from a peer review proceeding is subject to a special motion to strike pursuant to section 425.16 because it qualifies as "'any other official proceeding authorized by law'" pursuant to section 425.16, subdivision (e)(2). (*Id.* at p. 198; *DeCambre v. Rady Children's Hospital-San Diego, supra,* 235 Cal.App.4th 1, 14 [applying *Kibler* to an anti-SLAPP motion filed by hospital defendants in a lawsuit arising from peer review proceedings].)

The act of summarily suspending Sabit is part of the peer review process as set forth in the Hospital Bylaws and as analyzed in *Kibler*. Sabit's characterization of the gravamen of his complaint as unprotected *action* or *conduct* fails to acknowledge the analysis in *Kibler*. (§ 425.16, subd. (b)(1) [a special motion to strike applies to a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech"]; *Kibler v. Northern Inyo County Local Hospital Dist.*, *supra*, 39 Cal.4th 192, 198-201.) Sabit cannot avoid the anti-SLAPP statute by characterizing the allegations of his complaint as unprotected conduct. (*Nesson v. Northern Inyo County Local Hospital Dist.* (2012) 204 Cal.App.4th 65, 82-83, disapproved on other grounds by *Fahlen v. Sutter Central Valley Hospitals*, *supra*, 58 Cal.4th 655, 686, fn. 18.) Indeed, the anti-SLAPP statute applies to claims made in connection with the protected activity, regardless of the defendant's motive or the motive plaintiff ascribes to him. (*Id.* at p. 83.)

Regarding the second step of an anti-SLAPP motion analysis, Sabit has not established a probability of success with either of the causes of action alleged against the Hospital defendants. He admits that he possessed staff privileges at Ventura County Medical Center (and now in Michigan) and therefore cannot establish that he has been

excluded from the practice of medicine. (*O'Byrne v. Santa Monica-UCLA Medical Center* (2001) 94 Cal.App.4th 797, 812-813 [plaintiff remained on staff at other hospitals and defendant hospital took no action to prevent plaintiff from practicing at other hospitals].)

Sabit also has not established a probability of success regarding the intentional interference with contract cause of action because he has not provided evidence that the Hospital defendants knew of his employment contracts with Abou-Samra and that they acted knowing that the contracts would be disrupted. (*Davis v. Nadrich* (2009) 174 Cal.App.4th 1, 10 [elements of cause of action for intentional interference with contract include a defendant's knowledge of the contract and his intentional act designed to disrupt or induce a breach of the contract].) The sole evidence upon which Sabit relies is Wilde's deposition testimony that he knew Abou-Samra had "a partner [Sabit]," Abou-Samra was disappointed in Sabit, and Abou-Samra was thinking of severing the relationship. There is no evidence that the Medical Executive Committee knew this information or that they knew details of the employment or independent contractor agreements. The only reasonable inference from the evidence is that the Committee acted with an intent to protect the well-being of the hospital patients. (*Nesson v. Northern Inyo County Local Hospital Dist.*, *supra*, 204 Cal.App.4th 65, 82 [overriding goal of the state-mandated peer review process is to protect the public, and although important, physicians' due process rights are subordinate to public safety needs].)

*II.*

*Causes of Action against Abou-Samra*

Sabit argues that the fourth cause of action for intentional interference with prospective economic advantage did not arise from protected activity because Abou-Samra improperly influenced the Medical Executive Committee to disrupt Sabit's professional relationship with the Hospital defendants.

As discussed *ante*, our Supreme Court has determined that an anti-SLAPP motion may lie in defense of a lawsuit raising tort damage theories arising directly from a peer review committee recommendation. (*Kibler v. Northern Inyo County Local*

9

*Hospital Dist.*, *supra*, 39 Cal.4th 192, 196-197; *Young v. Tri-City Healthcare Dist.* (2012) 210 Cal.App.4th 35, 57.) The anti-SLAPP statute applies regardless of Abou-Samra's motive or the motive that Sabit ascribes to him. (*DeCambre v. Rady Children's Hospital-San Diego, supra,* 235 Cal.App.4th 1, 22 [anti-SLAPP statute applies to peer review committee's protected activity in terminating physician, despite physician's claim of discriminatory motive]; *Nesson v. Northern Inyo County Local Hospital Dist.*, *supra*, 204 Cal.App.4th 65, 83.)

Regarding the second step of the anti-SLAPP motion analysis, Sabit has not demonstrated a probability of prevailing on this claim. Wilde testified that Abou-Samra stated that he was disappointed with Sabit's patient care and that he questioned Sabit's veracity. Abou-Samra also stated that he would be "disassociating" with Sabit. There is no evidence that Abou-Samra and Wilde discussed Sabit's staff privileges or that Wilde shared this conversation with anyone. Indeed, Wilde testified that he believed that Sabit rendered appropriate medical care in "the vast majority of [his] cases." This evidence does not establish the element of an intentional act designed to disrupt a relationship. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153 [elements of the cause of action of intentional interference with prospective economic advantage include a defendant's knowledge of an economic relationship between plaintiff and a third party, and defendant's intentional acts designed to disrupt the relationship].) The trial court properly granted the anti-SLAPP motion regarding this cause of action.

### III.

### *Abou-Samra's Cross-Appeal*

Abou-Samra contends that the trial court erred by not granting his anti-SLAPP motion concerning the causes of action for breach of contract and an accounting because those causes of action arguably arise from the protected activity of a peer review proceeding. He points out that his participation in Sabit's peer review proceedings is the foundation for the complaint's allegations.

The trial court's ruling was proper. At best, the causes of action for breach of contract and an accounting allege a mix of protected and unprotected activity. Sabit

10

alleges that Abou-Samra terminated the independent contractor agreement without cause when he improperly caused and relied upon the summary suspension to terminate the agreement. The gravamen of this allegation concerns Abou-Samra's influence upon and interaction with the peer review committee as a pretext to terminate the agreement. As such, Abou-Samra's activity is protected. (*Kibler v. Northern Inyo County Local Hospital Dist.*, *supra*, 39 Cal.4th 192, 198.)

Sabit also alleges, however, that Abou-Samra owes him compensation pursuant to the employment agreement and the independent contractor agreement. The alleged non-payment of compensation and bonuses would be a breach of the agreements whether or not the termination was valid. Proof of these allegations does not involve evidence of protected activity. Indeed, the allegations of breach of the employment agreement by failing to pay compensation due predate the convening of the peer review committee and its recommendation of suspension. Sabit alleges that he earned unpaid compensation for services rendered between July 1, 2009, and September 16, 2010; the peer review committee met on December 3, 2010, and rendered its decision that day.

Moreover, the sixth cause of action for an accounting of compensation and bonuses is derivative of the causes of action for breach of contract. As such, it also does not involve protected activity. (*DeCambre v. Rady Children's Hospital-San Diego, supra,* 235 Cal.App.4th 1, 18 [physician's claims of harassment and intentional infliction of emotional distress not subject to anti-SLAPP motion because claims arose from alleged disparate treatment occurring throughout employment].)

If plaintiff can show a probability of prevailing on any part of his claim, the cause of action is not meritless and will not be struck in response to an anti-SLAPP motion. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820; *Baral v. Schnitt* (2015) 233 Cal.App.4th 1423, 1438.) "[I]f the nonmoving party demonstrates a prima facie case of prevailing on any part of a mixed cause of action, the anti-SLAPP motion fails. Our conclusion is based on: (1) the express words of the statute; (2) its underlying policies; and (3) the extraordinary consequences of the anti-SLAPP statute that distinguishes it from all other procedural motions." (*Baral*, at p. 1438.) Here Sabit

11

has established that the causes of action for breach of contract and an accounting for failure to pay compensation, expenses, and bonuses due and owing have some merit.

The orders are affirmed. The judgment of dismissal in favor of the Hospital defendants is also affirmed. The Hospital defendants and Abou-Samra shall recover costs and attorney fees in amounts to be determined by the trial court.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

EPSTEIN, J.[*]

_____

[*](Justice of the Court of Appeal, Second Appellate District, Div. 4, assigned by the Chief Justice pursuant to art. VI, § 6 of the Calif. Const.)

Mark S. Borrell, Judge

Superior Court County of Ventura

_____

Cohen & Lord, a P.C., Bruce M. Cohen, Jonathan F. Golding for Plaintiffs and Appellants Aria Omar Sabit, M.D. and Aria Sabit, M.D., P.C.

Reback, McAndrews, Kjar, Warford & Stockalper & Moore, LLP, Cindy A. Shapiro, James J. Kjar, Evan N. Okamura, Jacob Kozaczuk for Defendants and Appellants Moustapha Abou-Samra, M.D. P.C., Moustapha Abou-Samra, M.D.

Arent Fox LLP, Steven E. Bledsoe, Jonathan E. Phillips for Defendants and Respondents Community Memorial Health System, dba Community Memorial Hospital; Medical Staff of Community Memorial Hospital of San Buenaventura; Marc Beaghler, M.D.; Samuel D. Small, D.O.; Robert T. Mazurek, M.D.; William A. Speitel, M.D.; and Thomas F. Golden, M.D.