Filed 12/22/21  EEL Holdings v. LA Church CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| EEL HOLDINGS, LLC et al., | D078726 |
| Cross-complainants and Respondents, | |
| v. | (San Bernardino County Super. Ct. No. CIVDS1931444) |
| LA CHURCH, LLC et al., | |
| Cross-defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Bernardino County, Lynn M. Poncin, Judge.  Affirmed.

Law Office of Richard Jacobs and Richard B. Jacobs for Cross-defendants and Appellants.

Shantar Law, Nicholas S. Shantar; Scheppach Bauer PC, Brian R. Bauer; Law Office of Jeff Augustini and Jeff Augustini for Cross-complainants and Respondents.


In this appeal, cross-defendants Stephanie Smith and C. Martin Smith (together, the Smiths) appeal from an order of the trial court denying their

motion to strike specified portions of the cross-complaint filed by cross-complainants EEL Holdings, LLC (EEL), and Elliot Lewis (together, EEL/Lewis). The court concluded that the challenged allegations were not a "SLAPP" under Code of Civil Procedure section 425.16 (§ 425.16; at times the anti-SLAPP statute).[1]

The underlying dispute is between the parties to a lease (Lease) for commercial premises in San Bernardino (Premises) and a personal guaranty of the Lease (Guaranty). Following vandalism and fires at the Premises, LA Church, LLC (LAC), as lessor, initiated the underlying action by suing EEL and Lewis, as lessee and guarantor, respectively. In a cross-complaint, EEL/Lewis alleged claims against the Smiths, LAC, and Industrial Partners Group (IPG).

As relevant to the issues in this appeal, the Smiths focus on the following three, specific, allegations against them in EEL/Lewis's cross-complaint: The Smiths breached the Lease "*by suing for* negligence"; the Smiths breached the Lease "*by suing for* loss of rent"; and the Smiths breached the Guaranty "*by suing under it* without any grounds to do so." (Italics added.) Based on these allegations, the Smiths contend that the filing of LAC's complaint in this action is constitutionally protected activity for purposes of applying the anti-SLAPP statute.

Despite EEL/Lewis's affirmative allegations in the cross-complaint that the Smiths breached the contracts *by the filing of the complaint*, in

---

[1]  " 'SLAPP' is an acronym for 'strategic lawsuit against public participation.' " (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1 (*Baral*).) The anti-SLAPP statute sets forth the standards and the procedure for striking "meritless claims arising from protected activity." (*Id.* at p. 384, italics omitted.)

determining whether the challenged claims arise from constitutionally protected activity, we must independently review the pleadings and evidence. As we explain, in doing so here, EEL/Lewis do not seek relief—or otherwise intend that the Smiths' liability is—based on what the Smiths contend is the constitutionally protected activity of the filing of LAC's complaint in this action. Thus, we will affirm the order denying the anti-SLAPP motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

In January 2019, LAC (as lessor) and EEL (as lessee), entered into a commercial lease for specified property in San Bernardino (previously identified as the Lease for the Premises). Approximately a month later, Lewis (as guarantor) executed a guaranty of the Lease (previously identified as the Guaranty).

At no time has EEL occupied the Premises. After EEL took possession of the Premises, there were incidents of vagrancy and trespassing; and in August and October 2019, there were fires at the Premises. At that time, LAC and EEL disagreed as to who was responsible for insurance and whether the Lease had been terminated by a total destruction of the Premises.

Days after the second fire, LAC filed the underlying action. LAC named EEL and Lewis as defendants, alleging the following four causes of action: (1) breach of contracts (the Lease and the Guaranty); (2) breach of the

_____

[2] In making its determination whether a claim is subject to an anti-SLAPP motion, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); see *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79 (*City of Cotati*).) Thus, we base our factual summary on the allegations in the complaint and cross-complaint and the evidence in support of and in opposition to the anti-SLAPP motion.

implied covenant of good faith and fair dealing in each of the contracts; (3) negligence; and (4) destruction of property.

EEL/Lewis filed a cross-complaint, naming the Smiths, LAC, and IPG as cross-defendants. The cross-complaint asserts causes of action against "all cross-defendants" for: (1) breach of contracts (the Lease and the Guaranty); (2) breach of the implied covenant of good faith and fair dealing in each of the contracts; and (3) declaratory relief with regard to the parties' obligations under the Lease and the Guaranty. (Capitalization and bolding omitted.) In addition—and as particularly significant in this appeal—EEL/Lewis alleged facts to support a claim that each of the Smiths was the alter ego of LAC.[3]

The Smiths and others responded to the cross-complaint by filing a demurrer and the anti-SLAPP motion that resulted in the order on appeal (anti-SLAPP Order). With regard to the issues the Smiths raise on appeal, in

---

[3] These allegations include, but are not limited to, the following: "LAC is a shell company with no assets other than the Premises (which has [*sic*] been destroyed per LAC's own complaint), [and] has no other assets . . . ."; "the Smiths are the true owners and operators of the Premises, and that insurance on the Premises was held in the name of IPG and/or the Smiths personally and that they stand to recoup fire insurance proceeds from the destruction of the Pr[emises] and not LAC"; "LAC has no employees or separate office or operations from IPG, which are both run as the personal business enterprise of the Smiths"; EEL "was instructed to wire the [$33,000 security deposit for the Premises] to the 'Stephanie Smith Irrevocable Income Trust' . . . and not to LAC"; "LAC and IPG share an address and it appears both entities are controlled by the Smiths, so much so that they have instructed that business income (rental income) from LAC (through IPG) be deposited directly into a personal account held by the Smiths"; "the Smiths were and are commingling funds, using the corporate form for both IPG and LAC for their personal benefit and to evade creditors, and were directing payments owed to LAC to be paid directly for their benefit to personal accounts."

their anti-SLAPP motion, they sought to strike the following three "portions" of the cross-complaint:

- the Smiths "materially breached the Lease . . . *by suing for negligence*, which is not a basis for recovery under the Lease following a Premises Total Destruction";

- the Smiths "materially breached the Lease . . . *by suing for loss of rent* that it claims EEL refuses to pay, but which is expressly no[t] due under the terms of the Lease itself"; and

- the Smiths "breached the Guarant[y] *by suing under it* without any grounds to do so, and after the termination of the Lease to which the Guarant[y] related and addressed." (Italics added.)

According to the memorandum of points and authorities in support of the motion, since each of these three claims is alleged to have arisen from the filing of the complaint in the lawsuit, each is an act in furtherance of the constitutional right to petition or free speech.

EEL/Lewis opposed the anti-SLAPP motion by filing a memorandum of points and authorities and declarations from Lewis and EEL/Lewis's counsel. Among other arguments, EEL/Lewis, through the following testimony from their attorney, explained that they were not seeking any relief from any of the cross-defendants based on LAC's filing of the complaint:

> "Each of the challenged passages of the Cross-Complaint were [*sic*] intended to show the existence of an actual controversy between the parties over the interpretation of the Lease and the legal and financial ramifications of various salient Lese [*sic*] provisions following the October 2019 fire. While some of the passages probably could have been drafted more clearly, *it was not my intention, as set forth in the Prayer section of the Cross-Complaint, to seek any remedies or damages on behalf of* [*EEL/Lewis*] *based on the filing by LAC of its Complaint*. Instead, the purpose of the challenged allegations was to show or support the

5

claims that LAC's interpretation of the Lease was without merit, as evidenced in part by its inability to support its claims by citing any supporting references to actual Lease provisions in its Complaint." (Italics added.)

With regard to the three specific portions of the cross-complaint that are at issue in this appeal, counsel testified:

"The gist or gravamen of the challenged portions . . . of the Cross-Complaint, particularly when the Cross-Complaint is read as a whole (including specific causes of action and requests for relief), also shows *EEL did not intend to sue LAC simply for filing a complaint. . . .* Again, these allegations centered on disputed contract positions, not on the filing itself of LAC's Complaint. That also should be clear from *the lack of any claim for damages or other relief for the filing of the Complaint*, and EEL's request, as damages, only for the return of its security deposit and the refund of a portion of its October 2019 rental payment." (Italics added.)

To put counsel's testimony in context as to the relief being sought in their cross-complaint, EEL/Lewis prayed only for "damages according to proof, but in no event less than $42,570." Based on the allegations in the cross-complaint and the evidence in Lewis's testimony, EEL/Lewis calculated the amount of these damages based on: "the return of [EEL's] $33,000 security deposit"; and "the return of at least a $9570 portion of its [$16,500 monthly] rent payment," which covered the October 2019 time period after the fire. Consistently, in their written opposition to the anti-SLAPP motion, EEL/Lewis stressed "how [only] LAC had breached the [L]ease, why the Lease was terminated, and significantly, *why* [*the Smiths*] *and LAC were alter egos*." (*Sic*; original italics and underscoring.)

In reply to EEL/Lewis's opposition, the Smiths initially noted that, despite counsel's testimony and EEL/Lewis's arguments, the cause of action for breach of contract in the cross-complaint "[wa]s asserted against 'ALL

6

CROSS-DEFENDANTS' "—which includes the Smiths. The Smiths emphasized that, based on the allegations in EEL/Lewis's cross-complaint and the arguments in EEL/Lewis's demurrer (that was heard at the same time as the anti-SLAPP motion), EEL/Lewis "<u>admit</u> that they are seeking breach of contract against [the Smiths] solely based on alter-ego." (*Sic*.)

Following oral argument, the trial court denied the Smiths' anti-SLAPP motion (previously identified as the anti-SLAPP Order). The court reasoned:

> "In the present case, portions of [EEL/Lewis's] first cause of action do appear to be based upon protected activity as the cross-complaint alleges that the [Smiths] breached the [L]ease by suing [EEL/Lewis] for negligence and loss of rent. [¶] However, [*EEL/Lewis's*] *claim for relief is not based upon the protect[ed] activity*. In the prayer for relief, [EEL/Lewis] seek the return of their $33,000 security deposit and the return of a prorated amount of their October 2019 rent of approximately $9,570 dollars for a total of $42,570." (Italics added.)

The Smiths timely appealed from the anti-SLAPP Order.[4]

## II. DISCUSSION

As we explain, the Smiths did not meet their burden of establishing that the trial court erred in denying their anti-SLAPP motion.

A. *Law*

Section 425.16, subdivision (b)(1) provides in full: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the

---

[4] LAC and IPG also appealed from the anti-SLAPP Order. Their appeals have been dismissed.

7

plaintiff has established that there is a probability that the plaintiff will prevail on the claim." For purposes of an application of the anti-SLAPP statute, " 'complaint' includes 'cross-complaint.' " (§ 425.16, subd. (h).) The anti-SLAPP statute "shall be construed broadly." (§ 425.16, subd. (a).)

We focus on the acts alleged to be protected activity, not the causes of action asserted. "Analysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action, as pleaded by the [complainant], arises from protected activity or has merit. Instead, courts should analyze . . . each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action[,] . . . *to determine whether the acts are protected* and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010 (*Bonni*), italics added; see *Baral*, *supra*, 1 Cal.5th at pp. 393-395.) As applicable in this appeal, the Smiths contend that the same *act*—namely, LAC's filing of the complaint in this action—is the constitutionally protected activity for all three specific claims at issue in their appeal.

In applying the anti-SLAPP statute, a court generally is required to engage in a two-step process. "First, the [moving party] must establish that the challenged claim arises from activity protected by section 425.16." (*Baral*, *supra*, 1 Cal.5th at p. 384; accord, *Bonni*, *supra*, 11 Cal.5th at p. 1009.) "If the [moving party] makes the required showing, the burden shifts to the [opposing party] to demonstrate the merit of the claim by establishing a probability of success." (*Baral*, at p. 384; accord, *Bonni*, at p. 1009.) " 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under

8

the statute.' " (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 (*Oasis West Realty*).)

We review de novo the denial of an anti-SLAPP motion. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).) For purposes of our prong one analysis, "[w]e exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Ibid.*) In addition to the pleadings, we must also consider evidence of the facts upon which the alleged liability is based.[5] (*Ibid.*; § 425.16, subd. (b)(2).) "We do not, however, weigh the evidence, but accept [the opposing party's] submissions as true and consider only whether any contrary evidence from the [moving party] establishes its entitlement to prevail as a matter of law." (*Park*, at p. 1067.)

B.    *Analysis*

1.    *Prong One—Protected Speech or Petitioning Activity*

Section 425.16, subdivision (b)(1) protects a person's constitutional right of petition in connection with a public issue. Section 425.16, subdivision (e) sets forth four categories of acts in furtherance of such right.[6] Where, as here, the parties filing the anti-SLAPP motion contend that the

_____

[5]    Although the caption on the anti-SLAPP motion indicates that declarations were included as part of the motion, none is included (or referred to elsewhere) in the record on appeal.

[6]    In part, section 425.16, subdivision (e) provides: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a . . . judicial proceeding . . . , (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . ."

activity is constitutionally protected as a statement made in a judicial proceeding or before a judicial body (§ 425.16, subd. (e)(1), (e)(2); see fn. 6, *ante*), there is no requirement that the statement be made in connection with a public issue. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1116 (*Briggs*).)

In the cross-complaint, EEL/Lewis allege that the Smiths breached the contracts in a number of regards. In particular, as the Smiths contend, the cross-complaint alleges that the Smiths, LAC, and IPG breached the Lease and Guaranty by suing EEL/Lewis in this action.

Our Supreme Court ruled almost 20 years ago: "A claim for relief filed in . . . court indisputably is a 'statement or writing made before a . . . judicial proceeding' " for purposes of section 425.16's prong one determination whether a cause of action arises from protected activity. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 90 (*Navellier*), citing § 425.16, subd. (e)(1).) That is because " ' "[t]he constitutional right to petition . . . includes the basic act of filing litigation." ' " (*Briggs, supra*, 19 Cal.4th at p. 1115; accord, *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1538 [" 'filing a lawsuit is an exercise of a party's constitutional right of petition' "].) For these reasons, the filing of the complaint in this action is "protected activity" for purposes of the anti-SLAPP motion. As our high court more recently explained, however, a claim is not subject to being stricken under the anti-SLAPP statute simply because it contests an action or decision that was arrived at following constitutionally protected activity; rather, "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of[.]" (*Park, supra*, 2 Cal.5th at p. 1060.)

Thus, based exclusively on the allegations in the cross-complaint, the challenged claims would be protected activity; but, we are not so limited. To

10

the contrary, as we introduced *ante*, the anti-SLAPP statute and Supreme Court authority *require* that, in determining whether the challenged claims arise from protected activity, we must also consider " 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability . . . is based.' " (*City of Cotati*, *supra*, 29 Cal.4th at p. 79, quoting § 425.16, subd. (b)(2).) As we explain, in doing so here, we have no difficulty agreeing with the trial court that the anti-SLAPP statute does not apply to the claims the Smiths are challenging in this appeal.[7]

To better understand the pertinent allegations in the cross-complaint, in their opposition to the anti-SLAPP motion, EEL/Lewis submitted declarations from their trial attorney who drafted the cross-complaint and from Lewis (on behalf of himself and EEL). They both testified that the only relief being sought in the cross-complaint is *the return of*: the $33,000 security deposit paid under the Lease; and at least $9,570 of the $16,500 October rent paid (after the October 2019 fire) under the Lease. As evidenced by the prayer of the cross-complaint, counsel explained that he never intended to "seek any remedies or damages on behalf of [EEL/Lewis] based on the filing by LAC of its Complaint." Consistently, the prayer in the cross-

_____

[7] In addition to arguing we should adopt the trial court's reasoning to affirm, EEL/Lewis also suggests as an alternative ground that the Smiths have no standing to bring an anti-SLAPP motion because *they* are not alleged to have engaged in protected petitioning activity where only LAC filed the complaint. The Smiths respond that they "stand in the shoes of [LAC]" and "should have the same anti-SLAPP protection as [LAC]." (Initial capitalization, bolding, and italics omitted.) Ultimately, we need not resolve this question. Assuming arguendo that the Smiths (as alter egos of LAC) could bring an anti-SLAPP motion based on allegedly protected activity by LAC, as we explain, the claims in the cross-complaint do not actually arise out of LAC's protected activity.

11

complaint seeks only the following relief: "damages according to proof, but in no event less than $42,570"; "costs and reasonable attorneys' fees"; and "other or different relief as deemed necessary or appropriate by the Court." In addition, counsel testified that, with regard to the three specific claims at issue in this appeal, "these allegations centered on disputed contract positions, *not on the filing itself of LAC's Complaint*." (Italics added.)

Based on this evidence, we readily agree with the trial court that the three claims (or allegations) of the cross-complaint at issue in this appeal do not "aris[e] from" the protected activity of LAC in filing the complaint in this action. (§ 425.16, subd. (b)(1).)

We are not persuaded by the Smiths' argument to the contrary. They assert that neither the allegations nor the claims at issue in this appeal—i.e., those relating to the three "portions" of the cross-complaint alleging a breach of contract by the filing of the complaint in this action—are " 'incidental' or 'collateral.' " Emphasizing that these claims are premised exclusively on the filing of the complaint, the Smiths distinguish this case from those which recognize that " 'incidental' or 'collateral' allegations in a complaint are not subject to an anti-SLAPP [motion]." (Citing *Baral*, *supra*, 1 Cal.5th at p. 394 ["Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16. [Citations.] Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute."].) We do not disagree. However, this argument does not take into consideration our reasoning above, which was also the basis of the trial court's ruling. *Despite the loose language of the challenged allegations*, our review of the pleadings and evidence confirms that EEL/Lewis did not seek relief—against either LAC *or* the Smiths—based

12

on the constitutionally protected activity of the filing of LAC's complaint in this action.

As we concluded *ante*, LAC's filing of the complaint in this action is protected activity under basic anti-SLAPP law. (§ 425.16, subd. (e)(1); *Navellier, supra*, 29 Cal.4th at p. 90; *Briggs, supra*, 19 Cal.4th at p. 1115.) However, as we also explained, we consider more than the mere allegations in the claims to which the anti-SLAPP motion is directed; we also consider the facts upon which the alleged liability is based, given the evidence in support of and in opposition to the motion. (§ 425.16, subd. (b)(2); *City of Cotati, supra*, 29 Cal.4th at p. 79.) Here, EEL/Lewis's attorney also testified that, as to both LAC and its alleged alter egos, the Smiths: "[T]hese allegations [in the cross-complaint] centered on disputed contract positions, *not on the filing itself of LAC's Complaint.* That also should be clear from the lack of any claim for damages or other relief for the filing of the Complaint, and EEL's request, as damages, only for the return of its security deposit and the refund of a portion of its October 2019 rental payment."[8]

Thus, based on the evidence and arguments regarding the alleged liability of LAC, for purposes of an application of the anti-SLAPP statute, the trial court properly found that the three claims (or allegations) of the cross-complaint at issue in this appeal do not "aris[e] from" the protected activity of filing the complaint in this action. (§ 425.16, subd. (b)(1).) The claims

---

[8]    Leading up to those statements, counsel testified:  In the allegations that are at issue in this appeal with regard to the breach of the Lease, "the point was that mere negligence was not sufficient grounds (even if true) for LAC to recover under the Lease . . ."; and in the allegations that are at issue in this appeal with regard to the breach of the Guaranty, "the intent was to demonstrate that upon termination of the Lease following the fire, Lewis no longer had any liability to LAC under the accompanying Guarant[y]."

against LAC—and derivatively against the Smiths as LAC's alleged alter egos—arise solely from its alleged breach of the Lease and its alleged breach of the Guaranty. Accordingly, in our de novo review, we conclude that the Smiths did not meet their burden on appeal of establishing trial court error as to prong one.

        2.     *Prong Two—Merit of Claims*

Because, as we just concluded, the claims that the Smiths challenge are not based on protected activity, the burden never shifted to EEL/Lewis to demonstrate the potential merits of their claims. (*Park*, *supra*, 2 Cal.5th at p. 1061; *Baral*, *supra*, 1 Cal.5th at p. 384.) For this reason, we do not reach the issue whether EEL/Lewis established a probability of success on the challenged claims. (*Gotterba v. Travolta* (2014) 228 Cal.App.4th 35, 43-44 [court need not discuss second prong if moving party fails to establish that claims arise from protected activity].) By not reaching the second prong, we express no view on the merits of the claims challenged by the Smiths (*City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 371) or the Smiths' potential defenses to these claims (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 496).

### III.  DISPOSITION

The anti-SLAPP Order is affirmed.  EEL and Lewis are entitled to their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)


IRION, J.

WE CONCUR:


AARON, Acting P. J.


DATO, J.