Filed 1/8/16  The Bank of New York Mellon  v. Regan CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE BANK OF NEW YORK MELLON,<br><br>     Plaintiff, Cross-defendant and Respondent,<br><br>     v.<br><br>BRIAN C. REGAN, Individually and as Cotrustee, etc., et al.,<br><br>     Defendants, Cross-complainants and Appellants. | D066555<br><br><br>(Super. Ct. No. 37-2013-29158-CU-OR-NC) |

APPEAL from an order of the Superior Court of San Diego County,

Earl H. Maas III, Judge.  Affirmed.


Rick L. Bove for Defendants, Cross-complainants and Appellants.

Boss Law Firm, Daniel R. Salas and Bobby B. Ashrafi for Plaintiff, Cross-

defendant and Respondent.

INTRODUCTION

In a case involving a dispute regarding whether an easement exists over the property of Brian and Maria Regan (the Regans) for access to a neighboring piece of property now owned by the Bank of New York Mellon (BNY Mellon), the Regans appeal an order granting BNY Mellon's special motion to strike four causes of action from the Regans' cross-complaint pursuant to Code of Civil Procedure section 425.16,[1] the anti-SLAPP (strategic lawsuit against public participation) statute. When BNY Mellon discovered the Regans erected a fence blocking access to what it believed to be an access easement to its property, BNY Mellon's title insurance company attempted to negotiate with the Regans regarding the easement. After those negotiations failed, BNY Mellon filed this quiet title action and a notice of the pending action (lis pendens). The Regans then filed a cross-complaint alleging BNY Mellon's activities in connection with the negotiations and its quiet title action constituted slander of title, violations of the Subdivision Map Act (SMA) (Gov. Code, § 66410 et seq.), intentional infliction of emotional distress, and common law negligence.[2] We conclude the conduct alleged in these causes of action are petitioning and speech activities protected by the anti-SLAPP statute and the Regans failed to establish a probability of prevailing on these claims

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] BNY Mellon did not move to strike the cross-complaint's fifth cause of action for quiet title and it is not at issue in this appeal.

2

because they are barred by the litigation privilege (Civ. Code, § 47). Therefore, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

A

The Regans and Frank and Janice Bigelbach (the Bigelbachs) jointly submitted an adjustment plat application to the City of Escondido (City) requesting approval of an adjustment to the boundary lines of four parcels of land, the one owned by the Regans and the remaining three owned by the Bigelbachs. The adjustment was part of a proposal to develop a tentative subdivision map for 11 single-family residential lots on the Bigelbachs' property. The proposal for the subdivision indicated access to the proposed lots would be provided by extending a nearby cul-de-sac road.

One adjustment between the Regans' parcel (Parcel D) and one of the Bigelbachs' parcels (Parcel C) required the Bigelbachs to convey to the Regans a strip of land that had provided access for Parcel C to and from Bear Valley Parkway, a public street, by a paved driveway. As part of the approval process, the Regans agreed to grant a 24-foot easement for emergency access across this strip of land in lieu of condemnation of the property for purpose of access.

The adjustment plat map approved in June 2005 depicts a proposed 24-foot access easement. Certificates of compliance referring to the adjustment plat map were recorded for each of the four parcels and the Regans received a grant deed for the strip of land from the Bigelbachs.

The Bigelbachs conveyed Parcel C to their son and his wife, Patrick and Lisa Bigelbach, in 2006. Thereafter, Patrick and Lisa Bigelbach obtained a loan secured by a deed of trust on the property. First American Title Insurance Company (First American) issued title insurance for the deed of trust on Parcel C. The description of the property referred to the June 2005 certificate of compliance, which referred to the adjustment plat map showing the 24-foot access easement to the property.

BNY Mellon became the successor in interest to Parcel C six years later, in 2012, as a result of a foreclosure sale. It also became the successor insured under the title insurance policy.

B

When BNY Mellon discovered the Regans had erected a fence blocking access to Parcel C across the easement from Bear Valley Parkway, BNY Mellon submitted a claim on the title insurance policy to First American. Upon investigation, First American discovered the easement to Bear Valley Parkway was not expressly reserved by recorded deed even though an easement is depicted on the adjustment plat map. Assuming this was due to inadvertence, First American contacted the Regans and attempted to negotiate a resolution of the access claim. First American hired counsel to continue negotiations or to proceed with a lawsuit on behalf of BNY Mellon.

C

When the negotiations were unsuccessful, BNY Mellon filed a verified complaint for (1) quiet title to easement by reference to subdivision map, (2) quiet title to easement by strict necessity, (3) quiet title to implied easement, (4) quiet title to easement by

4

balance of hardships, (5) reformation of written instruments, and (6) declaratory relief. BNY Mellon alleged the Regans' fence across the easement left "no means of physical access from Bear Valley Parkway to the otherwise landlocked Parcel C." BNY Mellon sought a judgment quieting title to the easement for purposes of vehicular and pedestrian right of ingress and egress to and from the public street system, and for an injunction requiring the Regans to remove the fence. It also sought a judgment reforming the legal description of the real property conveyed in the strip grant deed to include an express reservation of the easement. BNY Mellon also filed a lis pendens.

D

Thereafter, the Regans filed a cross-complaint against BNY Mellon for (1) slander of title; (2) damages pursuant to Government Code section 66499.32, subdivision (b), for violations of the SMA; (3) intentional infliction of emotional distress; (4) common law negligence; and (5) quiet title. The cross-complaint is 44 pages long and includes over 400 pages of attachments, most of which relate to the 2004 and 2005 approval process for the proposed subdivision. For brevity, we summarize only the facts alleged in the cross-complaint as they pertain to the claims regarding BNY Mellon's activities.

The cross-complaint alleges the Bigelbachs and other third parties committed wrongful acts related to the approval of the proposed subdivision and the separation of one parcel from the proposed subdivision plan in a "fraudulent scheme" to avoid the legal process required to develop a subdivision. It alleges Patrick and Lisa Bigelbach relied on

5

the "illegal separation" of Parcel C[3] from the approved subdivision map and an "unrecorded 'Adjustment Plat' which was used to support a fraudulent representation that there existed an easement across [the Regans' property] (which provided paved access to Bear Valley Parkway) for the benefit of [Parcel C] … [to] fraudulently obtain[] a mortgage loan … secured by a [d]eed of [t]rust … under which [BNY Mellon] ultimately was named as beneficiary."

First American issued a title insurance policy insuring title in the parcel "as having an easement across [the Regans' property] which provided paved access to Bear Valley Parkway for the benefit of [Parcel C]."

The cross-complaint alleges BNY Mellon "ratified and adopted" the Bigelbachs' "fraudulent scheme" because it is "the basis upon which [BNY Mellon] seeks relief in the instant action." It alleges when BNY Mellon discovered the parcel did not have an easement across the Regans' property, BNY Mellon submitted a claim to First American under the title policy "which, based upon the fraud committed by Patrick and Lisa Bigelbach, mistakenly insured title in [Parcel C] as having the right to an easement across [the Regans' property]."

The cross-complaint sets forth allegations regarding the investigation done by First American and the prelitigation negotiations with the Regans regarding the easement. As part of these negotiations, BNY Mellon's attorney offered a sum of money for the

---

3    This was apparently the subject property, Parcel C, but the cross-complaint refers to it as parcel 6 because it was so designated on some proposed subdivision plan maps. For consistency, we refer to it as Parcel C.

easement and indicated BNY Mellon intended to file a quiet title action if the matter could not be resolved. When the matter was not resolved, BNY Mellon filed its quiet title action seeking an access easement to Bear Valley Parkway over the Regans' property and recorded the lis pendens, which the Regans characterize as "groundless, false and fraudulent."

In the first cause of action for slander of title, the Regans allege BNY Mellon conspired with First American "to ratify and adopt the wrongful conduct of the Bigelbach Conspirators by filing in the name of [BNY Mellon] the groundless, false and fraudulent Verified Complaint in this case seeking to impose an easement across" their property. They cite the prelitigation negotiations regarding the easement and the filing of the lis pendens as evidence of the conspiracy.

The second cause of action seeks damages for expenses incurred in defending BNY Mellon's complaint, which they alleged was filed in a conspiracy to "implement the very same illegal scheme to avoid the requirements of the SMA." The third cause of action for intentional infliction of emotional distress and the fourth cause of action for negligence incorporate the prior allegations regarding the alleged wrongful conduct of BNY Mellon related to filing the lawsuit. The negligence claim also seeks attorney fees and litigation expenses for defending against BNY Mellon's action. The fifth cause of action seeks an order quieting title to the Regans' property.

E

BNY Mellon brought a special motion to strike the first four causes of action from the Regans' cross-complaint pursuant to the anti-SLAPP statute. BNY Mellon argued

7

these four causes of action are subject to protection of the anti-SLAPP statute since they "seek to impose liability on BNY Mellon simply because it filed the complaint in this action and recorded a [l]is [p]endens in connection therewith." It also argued the prelitigation communication with the Regans was protected communication because it was a precursor to litigation. BNY Mellon argued the Regans cannot prevail on those four causes of action because the litigation privilege bars these claims. BNY Mellon supported its motion with declarations of (1) Christina Yu, senior claims counsel for First American, who investigated BNY Mellon's title claim, engaged in negotiations with the Regans and retained counsel to negotiate or pursue litigation on behalf of BNY Mellon; and (2) the attorney retained by First American to continue negotiations and/or pursue litigation regarding the easement.

The Regans opposed the special motion to strike contending BNY Mellon's action is "a groundless false and fraudulent action initiated by BNY Mellon's insurer, [First American] as a means of illegally obtaining title to the Regans' property—property that First American mistakenly referenced in the … [t]itle [p]olicy—in order to avoid paying a $536,000.00 'covered' title insurance claim under that policy." They argued BNY Mellon's complaint is a collateral attack on the decision of the City's planning commission. They also argued their cross-complaint was a compulsory counterclaim not subject to the anti-SLAPP statute.

The Regans submitted a declaration of a civil engineer who previously worked for the City. He offered the opinion the City did not intend to require access to Parcel C by way of an easement across the Regans' property. Instead, access to the lot was intended

8

to be through another road, which would be extended as part of the project. He opined the tentative subdivision map indicated the panhandle portion of Parcel C would be transferred to the Regans in exchange for easements for emergency fire access and utilities. He also offered the opinion the Bigelbachs and others misrepresented an intention to seek approval for a 11-lot subdivision when they had already divided and conveyed the property for a 10-lot subdivision, resulting in a violation of the approval and various municipal and state laws.

The trial court granted BNY Mellon's special motion to strike finding "the allegations against the moving parties are based upon the filing of a lis penden[s], the pre-filing and post[-]filing actions of [BNY Mellon], and the perceived intent of [BNY Mellon] in taking each of the actions … in furtherance of the quiet title action. This satisfies the first prong of [section] 425.16." As to the second prong of the statute regarding the Regans' burden of establishing a probability of prevailing, the court stated, "[w]hile Regan[s'] counsel and papers make persuasive arguments why they may successfully defend against [BNY Mellon's] action, they do not establish a probability that they will succeed on their affirmative claims against [BNY Mellon]." The Regans appeal the order granting the anti-SLAPP motion.

## DISCUSSION

### I

#### *Generally Applicable Principles*

Section 425.16, subdivision (b)(1), states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free

9

speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  This statute " 'provides a procedure for the early dismissal of what are commonly known as SLAPP suits … —litigation of a harassing nature, brought to challenge the exercise of protected free speech rights.'  [Citation.]  A SLAPP suit is generally brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff.' "  (*Gotterba v. Travolta* (2014) 228 Cal.App.4th 35, 40.)  The Legislature requires courts to construe this statute broadly in favor of the moving party.  (§ 425.16, subd. (a).)

Section 425.16, subdivision (e), describes the type of activity protected by the anti-SLAPP statute.  An " 'act in furtherance of a person's right of petition or free speech … in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of

the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)[4]

The analysis of an anti-SLAPP motion involves two steps. " 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.] We review an order granting or denying a motion to strike under section 425.16 de novo." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820 (*Oasis West*).)

"We consider 'the pleadings, and supporting and opposing affidavits … upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence

---

4       When the first two subparts of section 425.16, subdivision (e), are at issue (i.e., speech or petitioning before a legislative, executive, judicial or other official proceeding; or statements made in connection with an issue under review or consideration by an official body), the moving party is not required to independently demonstrate that the matter is a " 'public issue' " within the statute's meaning. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113.)

11

only to determine if it has defeated that submitted by the plaintiff as a matter of law.' "
(*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

II

*The First Four Causes of Action Arise from Protected Activity*

In determining whether a claim arises from the protected activity, a court must "disregard the labeling of the claim [citation] and instead 'examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies' and whether the trial court correctly ruled on the anti-SLAPP motion.  [Citation.] We assess the principal thrust by identifying '[t]he allegedly wrongful and injury-producing conduct … that provides the foundation for the claim.' "  (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1271-1272.)  "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning."  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.)

BNY Mellon relies on the first and second categories of actions "in furtherance of" free speech or petition rights:  "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" and "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."  (§ 425.16, subd. (e)(1) & (e)(2); see *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.)

12

The only activity the cross-complaint alleged BNY Mellon engaged in relates to the prelitigation communications and negotiations, the filing of BNY Mellon's quiet title and reformation action, statements made in the complaint, and the recording of the lis pendens. The Regans alleged BNY Mellon knew or should have known there is no access for Parcel C across the Regans' land and its activities were done to "ratify and adopt" the Bigelbachs' "fraudulent scheme."

All of this is protected activity because statements or activities made in connection with or in preparation for litigation are subject to the protection of the statute. (*Briggs v. Eden Council for Hope & Opportunity*, *supra*, 19 Cal.4th at p. 1115.) Courts have "adopted a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908.) "Although many anti-SLAPP cases involving prelitigation communications concern demand letters or other statements to adverse parties or potential adverse parties [citations], there is no such requirement in the text of section 425.16, subdivision (e)(2). That provision has been held to protect statements to persons who are not parties or potential parties to litigation, provided such statements are made 'in connection with' pending or anticipated litigation." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1270.) Therefore, even inferences in the cross-complaint about communications between BNY Mellon and third parties, such as the Regans' lender, are connected to the anticipated litigation and are subject to the protection of the anti-SLAPP statute.

The Regans' opening brief contends the cross-complaint falls outside the scope of the anti-SLAPP statute because (1) the cross-complaint is a responsive compulsory cross-

complaint arising out of the same transaction or occurrence; (2) the BNY Mellon complaint is groundless, false and fraudulent; (3) the claims involve "a simple private 'property dispute' " outside the scope of protection of the anti-SLAPP statute; and (4) BNY Mellon's activities and communications cannot be in furtherance of protected speech or petitioning activity because they were "illegal and by reason of the illegality not constitutionally protected."

The Regans, however, have failed to provide appropriate record citations or arguments supported by authorities for any of these contentions. This is improper. "[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287; Cal. Rules of Court, rule 8.204(a)(1)(B)-(C).) "The appellate court is not required to search the record on its own seeking error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.) Additionally, we need not consider conclusory arguments for which no pertinent legal authority is furnished. "Such a presentation amounts to an abandonment of the issue." (*People ex rel. 20th Century Ins. Co. v. Building Permit Consultants, Inc.* (2000) 86 Cal.App.4th 280, 284.) However, we will exercise our discretion to consider two issues, the first and fourth, based on what we can glean from the record before us.

First, the four causes of action are not cross-actions arising from the same transaction or occurrence as BNY Mellon's action. Rather, the conduct upon which these causes of action are based—the filing of the quiet title action and the lis pendens and prelitigation communications and activities related to this action—were acts in

14

furtherance of the right of petition or free speech and are protected by the anti-SLAPP statute. (*City of Cotati v. Cashman*, *supra*, 29 Cal.4th at p. 78.) They do not fall within the exception for a compulsory cross-action. This is in contrast to the fifth cause of action for quiet title, which does arise out of the same transaction or occurrence as BNY Mellon's action because it seeks a determination on the merits of the Regans' claim of entitlement to the property without an easement. However, the fifth cause of action was not challenged by BNY Mellon's special motion to strike.

Second, for the first time on appeal, the Regans make one reference to a Supreme Court decision entitled "*Flatley*," apparently for the proposition that the illegality or crime exception may apply to this case. We presume this is a reference to *Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 (*Flatley*), in which the Supreme Court explained illegal speech or petitioning activity, which is conceded or conclusively proven, is not a *valid* exercise of rights of the constitutional rights of freedom of speech and petition and is not protected under the anti-SLAPP statute. (*Id.* at p. 316.) However, the exception for illegal activity is narrow and is only applied in "*rare cases* in which there is uncontroverted and uncontested evidence that establishes the crime as a matter of law." (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 386, italics added.) Additionally, the term "illegal" as used by the Supreme Court was intended to mean criminal conduct, not merely conduct in violation of a statute. (*Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 806-807.)

The Regans did not clearly raise the illegality exception below and have not met their burden of conclusively proving the alleged conduct by BNY Mellon was illegal and

15

not entitled to protection by the statute. (*Cross v. Cooper*, *supra*, 197 Cal.App.4th at p. 385.) Therefore, we conclude the anti-SLAPP statute applies to the first four causes of actions set forth in the cross-complaint.

III

*The Regans Have Not Demonstrated a Probability of Prevailing*

In the second step, the burden shifts to the plaintiff to show a probability of prevailing on its claims. To meet this burden, the plaintiff cannot rely solely on the allegations in the complaint and must present admissible evidence. (*Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 679.) The plaintiff's burden to show a "probability of prevailing is not high: We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699-700.) "If the plaintiff 'can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless' and will not be stricken; 'once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands.' " (*Oasis West, supra*, 51 Cal.4th at p. 820; *Burrill v. Nair* (2013) 217 Cal.App.4th 357, 379-382.)

In this case, BNY Mellon contends the Regans cannot prevail on their first through fourth causes of action because the litigation privilege bars each of these claims. "The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a

'publication or broadcast' made as part of a 'judicial proceeding' is privileged. This privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' [Citation.] 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.] The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' " (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) The purpose of the litigation privilege is to afford " 'the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.' " (*Ibid.*)

" 'The breadth of the litigation privilege cannot be understated. It immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution. [Citation.]' [Citation.] 'Any doubt about whether the privilege applies is resolved in favor of applying it.' " (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 212.)

The Regans have not responded either in the opening brief or in the opposition papers filed with the trial court to BNY Mellon's contention the litigation privilege bars their first four cross-claims. Instead, their response has been to argue and present evidence in support of their contention BNY Mellon's quiet title action has no merit because no easement exists over their property. The issue of whether or not an easement for Parcel C exists across their property will be resolved on the merits of BNY Mellon's

17

quiet title action and the fifth cause of action in the Regans' cross-complaint for quiet title.  By failing to address the issue of the application of the litigation privilege, the Regans have waived any argument to the contrary.  (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["[i]ssues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived"].)  As such, they have failed to meet their burden of showing a probability of prevailing on the first four causes of action.

## DISPOSITION

The order granting the special motion to strike is affirmed.  BNY Mellon shall recover its costs on appeal.

MCCONNELL, P. J.

WE CONCUR:

MCDONALD, J.

AARON, J.

18