Filed 7/11/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| WASTEXPERTS, INC., | B325299 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCV19512) |
| v. | |
| ARAKELIAN ENTERPRISES, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Monica Bachner, Judge.  Reversed.

Frost, Christopher Frost, John D. Maatta and Nicholas Lauber for Plaintiff and Appellant.

Manatt, Phelps & Phillips, Ronald B. Turovsky, Donald R. Brown and Benjamin G. Shatz for Defendant and Respondent.

## INTRODUCTION

Here we conclude that a declaratory relief claim filed in response to an attorney's cease and desist letter in a waste collection dispute is not a strategic lawsuit against public participation (SLAPP). (Code Civ. Proc., § 425.16.)[1] We also conclude that communications sent to non-parties about the dispute fall within the commercial speech exemption to the anti-SLAPP law. (§ 425.17, subd. (c).) Appellant WasteXperts, Inc. (WasteXperts) appeals from the trial court's order granting a motion to strike its entire complaint. We reverse. We publish to draw attention to our concluding note on civility and persuasive brief writing.

## FACTUAL AND PROCEDURAL BACKGROUND

I.      *The Complaint*

In June 2022, WasteXperts filed a complaint against both respondent Arakelian Enterprises, Inc. dba Athens Services (Athens) and the City of Los Angeles (City). The complaint alleged that Athens holds a waste collection franchise from the City. Los Angeles Municipal Code (LAMC) section 66.01 prohibits anyone from hauling waste on City streets without such a franchise, unless they have an express permit from the City.

The contract between Athens and the City permits Athens to impose a "Distance Charge" on individual property owners every time an Athens employee must move a collection bin from its permanent location on the owner's property to the curbside for collection. Property owners may avoid

---

[1]     All subsequent statutory references are to the Code of Civil Procedure, unless otherwise noted.

this charge by moving the bins themselves, in advance of collection. The bins belong to Athens, not the property owners.

WasteXperts charges commercial and multi-family residential property owners a fee to manage their "on-site" waste gathering; this fee includes moving collection bins from their permanent locations on the property to the curbside for Athens to collect. Athens sent WasteXperts a "cease and desist" letter, arguing that WasteXperts was not legally permitted to handle Athens's bins. The letter came from Athens's eventual trial counsel and complained that the competition from WasteXperts was "extremely damaging to Athens' business operations, financial interests, and economic prospects." It threatened that Athens would "exercise all remedies" and "seek damages" for this "tortious conduct" which it asserted was "illegal, unfair, and irresponsible." If WasteXperts did not stop moving the bins to the curb, Athens would "proceed with enforcing [its] rights without any further notice."

At the same time, Athens began refusing to allow WasteXperts to reschedule collection days on behalf of its clients. Athens also sent notices directly to those clients, demanding that the clients compel WasteXperts to stop moving Athens's bins.

In its complaint, WasteXperts sought seven judicial declarations involving both Athens and the City: (1) that the City has no authority to prevent a property owner from hiring an on-site waste manager, (2) that the City cannot give Athens the exclusive franchise to move collection bins to the curb, (3) that the City cannot require a franchise agreement for on-site waste management, (4) that the contract between the City and Athens did not give Athens a franchise for on-site waste management, (5) that the City did not give Athens the exclusive franchise for moving collection bins to the curb, (6) that ratepayers are not required to allow Athens to move collection bins, and

(7) that Athens violated its contract with the City when it declined requests to reschedule collection days.

The complaint also asserted tort claims against Athens for interference with contract, interference with prospective economic advantage, unfair competition, and trade libel.

## II.    *Anti-SLAPP Motion and Discovery Request*

Athens responded with an anti-SLAPP motion to strike the entire complaint.[2] The motion was filed and served on August 17, 2022. Under section 425.16, subdivision (g), discovery was automatically stayed as of that date.

Three court days before the opposition was due, WasteXperts asked Athens if it would stipulate to allow WasteXperts to amend the complaint; as an alternative, WasteXperts asked if Athens would agree to continue the special motion to strike so that WasteXperts could take limited discovery. Athens declined both requests the next day.

WasteXperts then filed an ex parte application asking the trial court to (a) shorten time on a motion to lift the discovery stay and (b) continue the hearing on the anti-SLAPP motion. The application was denied the same day the opposition was due.

## III.    *Trial Court's Order*

After hearing argument and taking the matter under submission, the court granted the anti-SLAPP motion. On the first prong of the analysis, the court found that each cause of action was based on Athens's communications

---

[2]    The City was not a party to the motion and is not a party to this appeal.

to WasteXperts and its clients.  The court concluded that these communications anticipated litigation and were therefore protected activity. It also held that the commercial speech exemption contained in section 425.17, subdivision (c) did not apply here.

Proceeding to the second prong, the court determined that WasteXperts had no probability of obtaining any of the seven judicial declarations it sought.  The court reasoned there was no merit to any argument regarding legal limitations on the City's power, Athens had the correct interpretation of its contract with the City, and WasteXperts had no standing to dispute that interpretation.  Finally, the court found that each tort claim was barred by the litigation privilege contained in Civil Code section 47, subdivision (b).[3]

WasteXperts timely appealed the order granting the motion.[4]

## DISCUSSION

WasteXperts challenges both the denial of its request for limited discovery and the anti-SLAPP order.  It argues that none of its claims arise from activity protected by section 425.16.  It contends that the "commercial speech" exemption contained in section 425.17 applies here.  It also claims that it has shown a probability of prevailing on the merits.

---

[3]     The court pointed out certain additional flaws in each tort claim. WasteXperts does not address that portion of the court's analysis.

[4]     Athens filed a motion to dismiss the appeal as moot because WasteXperts did not appeal from the subsequent judgment entered by the court.  We denied that motion.  Respondent argues the point again in its brief.  We decline the invitation to reconsider the previous ruling.  An order granting an anti-SLAPP motion as to the entire complaint is itself a judgment.  (*Melbostad v. Fisher* (2008) 165 Cal.App.4th 987, 992–997.)

5

I.    *Analysis*

Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

"Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)  "If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'" (*Ibid.*)  At this second stage, the court "does not weigh evidence or resolve conflicting factual claims.  Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384–385.)

"We review de novo the grant or denial of an anti-SLAPP motion. [Citation.]  We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity.  [Citations.]  In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based.  [Citations.]  We do not, however, weigh the evidence, but accept plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes

6

its entitlement to prevail as a matter of law." (*Park, supra,* 2 Cal.5th at p. 1067.)

A.    *Protected Activity*

A cause of action arises from protected activity where the act underlying the cause of action, "the wrong complained of," is itself protected. (*Park, supra,* 2 Cal.5th at p. 1060; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77 (*Cotati*).)  Section 425.16, subdivision (e)(2) protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."  Communications may be protected under that subdivision if they concern the subject of a present dispute and litigation is ""contemplated in good faith and under serious consideration.""  (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268 (*Neville*); see also *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115.)

Athens argues that the entire lawsuit is based on its prelitigation correspondence, either directly with WasteXperts or with their mutual clients.  WasteXperts disagrees; it also contends that the commercial speech exemption applies to take these statements out of the protection of section 425.16.

We conclude that the claim for declaratory relief is not based on the parties' prelitigation correspondence, and therefore does not arise from protected activity.  We additionally conclude that the remaining claims are based on correspondence which was sent in anticipation of litigation and

7

would therefore be protected activity under section 425.16.[5]  However, we also hold that the commercial speech exemption applies to remove that protection here.

### 1.    *Declaratory Relief*

Because an action for declaratory relief may be filed in advance of an actual injury, identifying the "act" underlying the claim can be difficult. Declaratory relief claims arise from the dispute to be resolved, and that dispute itself is necessarily based on at least two competing positions. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477–478.)  Prelitigation communications which express those positions "may provide evidentiary support for the complaint without being a basis of liability."  (*Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1215.)  To separate communications which form the source of the dispute from those that merely provide evidence of it, courts ask whether "the same dispute would exist" if there were no pending threat of litigation.  (*Gotterba v. Travolta* (2014) 228 Cal.App.4th 35, 42 (*Gotterba*).)[6]

---

[5]    We, like the trial court, need not address Athens's argument that these communications also constitute statements made in connection with an issue under executive review.  Because the declaratory relief action does not arise from the communications, it does not matter whether those communications relate to an issue under executive review.  Because the tort claims do arise from prelitigation communications, there is no need to inquire into executive review.

[6]    At oral argument, counsel for Athens said WasteXperts had forfeited this issue by failing to cite *Gotterba* in their opening brief.  However, *Gotterba* was cited to the trial court, the opening brief makes the same argument that appears in *Gotterba*, and the respondent's brief addressed the argument at length.  (See *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1122.)  Therefore, appellant's failure to cite *Gotterba* until

8

In arguing that the declaratory relief claim arises from protected activity, Athens points to the "numerous" times the complaint references the communications. Athens also argues that the action was filed after the communications were sent and would not have been filed if they hadn't been sent. Athens asserts that without the communications, there would be "nothing left in the complaint."

But there would be something left in the complaint. Athens has a contract with the City that gives it the "exclusive" right to provide both garbage hauling and "Extra Services" within its assigned territory; the contract defines "Extra Services" to include "Distance Charges" for moving collection bins to the curbside for collection. However, LAMC section 66.28 provides a property owner or "his agents" the right to move those collection bins. There is a dispute here over who has the right to move the bins when they are on the property owner's premises; more specifically, there is a dispute about whether Athens has the exclusive right to move them or the LAMC creates an exception that permits WasteXperts to do so as well. The dispute arises from the fact that WasteXperts has been moving the bins, not from any communications between the parties after WasteXperts began to do so.

The communications sent by Athens establish that the dispute is real and ongoing, the "actual controversy" required for declaratory relief. (§ 1060.) If the communications had contained no reference to legal action, express or implied, the disputed overlap between the parties' services would still exist. The heart of Athens's letter to WasteXperts is its claim that

their reply neither forfeits the issue nor prevents this court from applying *Gotterba*. (See *City of Oakland v. Hassey* (2008) 163 Cal.App.4th 1477, 1495–1496, fn. 17.)

9

"WasteXperts should be aware that it cannot move property without the consent of its owner." Even if that claim were not buttressed with threats of litigation, WasteXperts would still be moving Athens's bins, and Athens would still want them to stop. (See *Gotterba, supra,* 228 Cal.App.4th at p. 42 ["[i]f the threats of litigation were removed from [the] demand letters, the same dispute would exist"].) And if the letter caused WasteXperts to seek legal resolution of that dispute, the lawsuit arises from the dispute, not the communication. (*Cotati, supra,* 29 Cal.4th at p. 78.)

Athens relies on *Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459 (*Lunada*), *South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634 (*South Sutter*), and *CKE Restaurants, Inc. v. Moore* (2008) 159 Cal.App.4th 262 (*CKE*). None of these cases is on point. In both *Lunada* and *CKE*, the protected activity was a formal notice required by consumer protection statutes as a predicate to litigation; without the notices, there would have been no actual controversy between the parties. (§ 1060; *Lunada, supra,* 230 Cal.App.4th at pp. 470–473 [notice under the Consumers Legal Remedies Act]; *CKE, supra,* 159 Cal.App.4th at pp. 266–267, 271 [notice under Prop. 65].) *South Sutter* involved a plaintiff that had lost a previous anti-SLAPP motion and attempted to re-file the same lawsuit as a declaratory relief action. (*South Sutter, supra,* 193 Cal.App.4th at pp. 647–649, 658–667.)

Here, none of the communications at issue created the dispute about whether WasteXperts may move the collection bins from their place on a property owner's premises to the curbside. The portion of the complaint that seeks declaratory relief does not ask Athens to clarify or retract any of its communications. (See *Gotterba, supra,* 228 Cal.App.4th at p. 42.) An action that seeks to resolve an existing disagreement does not arise from protected

10

activity merely because one party first "communicated their disagreement" to the other. (*Ibid.*) It would be an "absurd result that a person receiving a demand letter . . . would be precluded from seeking declaratory relief" to resolve the dispute raised in the letter. (*Ibid.*)

The cause of action for declaratory relief does not arise from protected activity.

### 2. *Tort Claims*

The remaining causes of action allege specific injuries that arise directly from communications sent by Athens. Each of the two interference torts is based on the effect of communications sent by Athens to the parties' mutual clients. The unfair competition and trade libel claims are based on the content of those same communications—alleging that they falsely accused WasteXperts of improperly handling Athens's collection bins. The trial court correctly ruled that these communications were sent in anticipation of litigation and therefore would ordinarily be protected by section 425.16, subdivision (e)(2).

Whether communications properly anticipate litigation is a question of fact. (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251.) The communications themselves are sufficient to establish that fact; no other evidence of the sending party's state of mind is required. (*Neville, supra,* 160 Cal.App.4th at p. 1269; see also *Trinity Risk Management, LLC v. Simplified Labor Staffing Solutions, Inc.* (2021) 59 Cal.App.5th 995, 1005 [independently reviewing contents of correspondence].)

11

One letter and one email exchange were admitted into evidence.[7] The letter is signed by Athens's general counsel and addressed to the client's legal department. It says that the client may be "aiding in ongoing violations of the Municipal Code" and that the client "is required to accept our services as a matter of law." After citing various portions of the contract and the LAMC, the letter closes with the statement that Athens "is willing to work with [client] to deliver cost savings, but we cannot allow the situation . . . to continue unaddressed."

The email exchange, between an Athens sales manager and a client administrator, begins with the Athens employee mentioning WasteXperts and asserting that other companies are "not allowed to pull our equipment out; it is a liability and operational issue." When asked for clarification, Athens responded that WasteXperts is "in violation" of "LA municipal codes and contract terms" and that "the City of Los Angeles has confirmed our position." Athens acknowledged that WasteXperts was providing services at a lower price and expressed willingness to negotiate on costs, but its "primary concern" was that WasteXperts "immediately cease" moving the collection bins. The exchange closed with a flat demand for WasteXperts to "cease service immediately."

These communications, when combined with the demand letter Athens sent directly to WasteXperts, clearly show that Athens was contemplating litigation seriously and in good faith. (See *Neville, supra,* 160 Cal.App.4th at p. 1269.) WasteXperts points out that both the letter and the email contain

---

[7] WasteXperts attempted to introduce other evidence of interfering acts via the declaration of Erica Boulting. However, the trial court sustained objections to that evidence. WasteXperts does not challenge those rulings on appeal.

suggestions that Athens would negotiate costs with the clients. However, the tenor of the notices was to invoke the law and prevent WasteXperts from moving Athens's collection bins.

WasteXperts also argues that neither the phrase "cease and desist" nor "anticipation of litigation" appear in the communications to its clients, and Athens never actually filed the lawsuit it threatened in its demand letter to WasteXperts.[8] Those points are not persuasive. The fact that WasteXperts ultimately beat Athens to the punch by filing its action first says nothing about Athens's intentions at the time it sent the communications. And the presence or absence of magic words does not change the nature of a communication. The evidence shows Athens's communications with the clients anticipated litigation, and therefore would be protected activity, unless an exemption applies to remove that protection.

### 3. *Commercial Speech Exemption*

WasteXperts argues that, even if Athens's communications with their mutual clients would ordinarily be protected by section 425.16, subdivision (e)(2), they are exempted from that protection by section 425.17, subdivision (c). Section 425.17, subdivision (c) provides, in relevant part: "Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services . . . arising from any statement or conduct by that person if both of the following conditions exist: [¶] (1) The statement or conduct consists of representations of fact

---

[8] WasteXperts also argues that its claims were based on harassing conduct rather than speech. Because we conclude that the commercial speech exemption applies to the communications sent by Athens to the clients, we need not address this argument.

13

about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services. [¶] (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer, or the statement or conduct arose out of or within the context of a regulatory approval process, proceeding, or investigation."

This exemption from the anti-SLAPP law is narrowly construed. (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 22 (*Simpson*).) The exemption has four elements: (1) the defendant is "'engaged in the business of selling or leasing goods or services,'" (2) the claim arises from "'representations of fact'" about defendant's or a business competitor's "'operations, goods, or services,'" (3) the representations were made for the purpose of selling or delivering the defendant's goods or services, and (4) the intended audience is "an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer." (*Xu v. Huang* (2021) 73 Cal.App.5th 802, 814 (*Xu*), quoting in part *Simpson, supra,* 49 Cal.4th at p. 30.) WasteXperts bears the burden of proving that the exemption applies here. (*Simpson, supra,* 49 Cal.4th at p. 22.)

The trial court found that the exemption did not apply, for two reasons. First, the court determined that the exemption only applies to comparative advertising. Second, the court found, based on allegations in the complaint, that Athens was not a "business competitor" of WasteXperts. We disagree.

14

a. *Comparative Advertising*

The court limited the commercial speech exemption to comparative advertising based on language from *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 147 (*FilmOn*), which says that the statute only applies to a subset of commercial speech, "specifically, comparative advertising."[9] However, that language was merely the final clause of a sentence in which the Court observed that the commercial speech exemption does not cover everything that may possibly be described as commercial speech. (*Ibid.*) The issue there was not whether the commercial speech exemption applied; the parties had stipulated that it did not. (*Id.* at p. 147 fn. 4.) The issue was whether commercial context could be considered in determining whether speech is protected under section 425.16, subdivision (e)(4). (*Id.* at pp. 146–148.)

Because no case is authority for a proposition not therein considered, nothing in *FilmOn* "precludes the applicability of the commercial speech exemption under the facts before us." (*Neurelis, Inc. v. Aquestive Therapeutics, Inc.* (2021) 71 Cal.App.5th 769, 787, fn. 5 (*Neurelis*); see also *Xu, supra,* 73 Cal.App.5th at pp. 814 & fn. 13, 816 & fn. 15 [noting that the phrase "comparative advertising" does not appear in the statute].) *FilmOn* did not add a fifth element to the exemption, nor does it implicitly require courts to make a preliminary finding about whether the case involved "comparative advertising." (See *Neurelis, supra,* 71 Cal.App.5th at pp. 787–

---

[9] The trial court also cited *Demetriades v. Yelp, Inc.* (2014) 228 Cal.App.4th 294, 309, which says that section 425.17, subdivision (c) "is aimed squarely at false advertising claims." But *Demetriades* involved a false advertising claim. (*Id.* at p. 298.) The court was not trying to define the outer limits of the statute; the court was pointing out that the claims at hand were the statute's primary target. (*Id.* at p. 308–310.)

15

788 & fn. 5.) Communications fall into the commercial speech exemption if they meet the elements of the exemption; no other analysis is required.

      b.     *Business Competitors*

In its complaint, WasteXperts alleges it did not set out to compete with Athens. During the prelitigation exchange of demand letters, WasteXperts told Athens that competition between the two was unnecessary. But statements about what a party intended when they opened their business, or later comments about possible compatibility between two businesses, do not constitute a concession as to whether the businesses are presently competing.

Parties are competitors when the goods or services they offer overlap; they are not competitors when their offered goods or services do not overlap. (See *Simpson, supra,* 49 Cal.4th at pp. 32–33 [comparing a lawyer with a manufacturer of galvanized screws]; *Muddy Waters, LLC v. Superior Court* (2021) 62 Cal.App.5th 905, 920 [comparing a financial analyst and short seller with an aluminum merchant].) Here, Athens tried to induce WasteXperts to stop moving collection bins on the property owner's premises, claiming that only Athens may provide that service.

It is not disputed that both parties perform at least that one identical service, for which both parties charge a fee. It is clearly Athens's position that the competition is illegal because WasteXperts is in violation of the City franchise agreement. Nevertheless, there is a direct competitive relationship between the two companies. Athens's communications with the parties' mutual clients fall under the commercial speech exemption contained in

16

section 417.25, subdivision (c).[10]  Therefore, they do not constitute protected activity, and the tort claims asserted by WasteXperts do not arise from protected activity.

### B.  *Probability of Prevailing on the Merits*

Because we conclude that none of the claims asserted by WasteXperts arises from protected activity, we need not decide whether WasteXperts established a probability of prevailing on the merits.  (*Gotterba, supra,* 228 Cal.App.4th at p. 43.)  We express no opinion on the applicability of the litigation privilege as a defense to any cause of action in the complaint, nor on any other substantive challenge to the complaint.  Likewise, we need not address the request to conduct limited discovery.

### II.  *Civility*

Having resolved the merits of the appeal, we cannot allow the tone of the briefing to pass without comment.  Appellant's briefs use inappropriately harsh terms to launch needless and unsubstantiated attacks on the decisions made by the trial judge, as well as against the opposing party and its lawyers.  We recognize WasteXperts may not prosecute its appeal without responding to the trial court's orders.  But counsel can dispute the merits of a ruling without calling it "transparently erroneous," "egregious," or a "truly perverse miscarriage of justice."  Counsel did no better in proclaiming that

---

[10]  Whether Athens and WasteXperts are business competitors was the only portion of the four-element test for the commercial speech exemption litigated by the parties in the motion below.  The trial court addressed no other portion of the test.  Nor have the parties done so in their briefing on appeal.  Therefore, no further analysis is necessary.  (See *Ables v. A. Ghazale Bothers, Inc.* (2022) 74 Cal.App.5th 823, 827–828.)

17

"the overreach by the trial court here is nothing short of shocking, effectively blessing Athens' business threats . . . and immunizing them." Appellant can certainly challenge the outcome without such unfounded insinuations that the trial judge had become an advocate for the other side.

Appellant targets both respondent and its counsel in the same freewheeling, unprofessional manner. None of these statements were necessary. None of the vitriol advanced the legal arguments in this case. To the contrary, this incivility created an unnecessary distraction to both opposing counsel and this court.

Emotional diatribes do nothing to support the arguments made by counsel. In fact, this verbiage serves the opposite purpose. It requires the court to spend additional resources filtering out the hyperbole, and requires opposing counsel to bill their client for additional time to compose a response.

Ad hominem attacks and other invective detract from counsel's legal arguments, signal inappropriate personal embroilment in the dispute, and indicate an inability to engage in the reasoned analysis the courts need and counsel's clients deserve. When counsel resort to name-calling and to unsupported claims of misconduct, they risk obscuring any meritorious arguments they may have. Appellant's counsel would be well advised to refrain from incivility in the future.

//

//

//

//

//

18

## DISPOSITION

The order granting the anti-SLAPP motion is reversed.  Appellant WasteXperts shall recover its costs on appeal.

**CERTIFIED FOR PUBLICATION**


ZUKIN, J.

WE CONCUR:


CURREY, P. J.


MORI, J.

19